Gulf, Colorado & Santa Fe Railway Company v. W. W. Dimmitt.

Decided November 10, 1897.

1. **Interstate Commerce—Connecting Lines—Tariff.**

Where connecting carriers engaged in interstate transportation, though not agreeing on any joint tariff, establish and publish, in the manner prescribed by the statute governing interstate commerce, separate rates covering such transportation, a contract by either or both to carry the freight for either a less or a greater compensation than the established rate is unlawful, and their right and duty to collect the established rate continues.

2. **Same.**

Where the contract does not come within the operation of such statute, an initial carrier contracting for such through transportation at $52 would be bound by such

contract, though its published rate was $25 and that of the connecting line $50 for their respective mileage. Such connecting line would then be bound to make delivery on tender of the contract rate, it being in excess of its own published tariff for its portion of the line, and the contract binding the initial carrier as to the remainder.

### 3. Same—Tariffs—Evidence—Records of Commission.

The records of the Interstate Commerce Commission not being within reach of the process of the State courts nor provable by certified copies, parol evidence is admissible to show the filing of schedules of rates with such Commission and their contents.

APPEAL from the County Court of Bell. Tried below before Hon. JNO. M. FURMAN.

J. W. Terry and Chas. K. Lee, for appellant.—1. The undisputed evidence showing that the Atchison, Topeka & Santa Fe Railway Company had established and filed with the Interstate Commerce Commission a tariff rate from Guthrie, Oklahoma, to Purcell, Indian Territory, and that the Gulf, Colorado & Santa Fe Railway Company had established, published, and filed with the Interstate Commerce Commission a tariff rate from Purcell, Indian Territory, to Temple, Texas, and that such were the only rates established, promulgated, or enforced by either of such roads between Guthrie and Temple, and applying at such time, any contract for any other or different rate would have been contrary to the provisions of the Interstate Commerce Commission, a discrimination against other shippers, and illegal and void. Defendant was justified under the law in collecting, and was bound to collect said interstate rate of $75 on the full carload, and on plaintiff's refusal to pay the same, was justified in selling his stock and he was not entitled to recover. Interstate Commerce Law, as amended in 1889, sec. 6; Receiver v. Fischl, 1 Texas Civ. App., 546; Railway v. Stoner, 23 S. W. Rep., 1020; Railway v. Johnson, 5 Texas Civ. App., 24; Miller v. Railway, 83 Texas, 518; Railway v. Williams, 77 Texas, 121.

2. Under the Interstate Commerce Law, any contract for transportation of the plaintiff's stock at other than the published tariff rate filed with the commission would have been illegal. It was therefore a material question in this case to know whether the published tariffs had been filed with the commission. Filing a paper is the mere delivery of the same into the custody of and keeping of the proper officers required by law to keep it. While generally it is his duty to indorse such filing upon the paper, the filing is accomplished by the delivery and not by the indorsement, and to this fact of manual delivery the oath of the officer receiving the same was competent proof and the best evidence. 7 Am. and Eng. Encyc. of Law, 960.

3. The tariffs filed, marks thereon, and other necessary records of the Interstate Commerce Commission filed and kept in accordance with the provisions of law, may be shown in any of the courts of this State by examined copies. In addition to the direct testimony of the witness Moseley, there were attached to his depositions true copies of the tariffs, and

these copies were admissible in evidence as examined copies. Coone v. Renick, 11 Texas, 137; 1 Greenl. on Ev., 127, sec. 91, 14 ed.·

*A. M. Monteith,* for appellee.—1. The shipment in this case was not one regulated by the Interstate Commerce Law, and the connecting lines were not prohibited from making any agreement for the shipment of the property in controversy. The evidence shows that no through joint rate had been agreed upon and published and filed with the Interstate Commerce Commission, as required by law, in order to make such connecting railroads subject to the penalties for violating the same. Railway v. Nelson, 4 Texas Civ. App., 349; Interstate Commerce Law, sec. 6.

2. If the defendant received the goods accompanied by a waybill fixing the freight charges, it would be a ratification of the contract as to rates, unless it dissented therefrom or by some way gave notice that said goods would not be shipped under such contract. The court below did not err as complained of in the twenty-first, twenty-second, and twenty-third assignments of error, and propositions under the same. Collins v. Ball, Hutchings & Co., 82 Texas, 259; Cannon v. Cannon, 66 Texas, 685; Van Sickle v. Catlett, 75 Texas, 404; Railway v. Heirs of Bowie, 2 Texas Civ. App., 437; Myers v. Jones, 4 Texas Civ. App., 330.

KEY, Associate Justice.—Appellee sued appellant to recover the value of a carload of horses, two saddles, bridles, and blankets, alleged to have been shipped by the Atchison, Topeka & Santa Fe Railway Company, and the Gulf, Colorado & Santa Fe Railway Company, from Guthrie, Oklahoma Territory, to Temple, Texas. Appellee claimed to have made a contract by which the freight was to be shipped the entire distance for $52. The suit was brought against the Gulf, Colorado & Santa Fe Railway Company, which, in proper form, denied that it had made or was bound by any contract by which the freight was to be shipped from Guthrie to Temple for the sum of $52, and alleged that the regular tariff rate for such shipment was $75: that the shipment was interstate commerce, and that an agreement to charge less than the regular tariff rate of $75 would be in violation of the Act of Congress regulating interstate commerce, etc.

The testimony shows that appellant's line of railway extends from Temple, Texas, to Purcell, Indian Territory, where it connects with the Atchison, Topeka & Santa Fe Railway, which extends to Guthrie, Oklahoma Territory, a distance of 150 miles from Purcell. The carload of horses was shipped from Guthrie by the Atchison, Topeka & Santa Fe Railway to Purcell, Indian Territory, where they were delivered to the appellant, and transported by it to Temple, Texas. Upon arrival at the latter place, the plaintiff tendered to appellant the sum of $52, claimed by him to be the agreed freight charges, and demanded the possession of the horses. Appellant demanded $75 freight charges, and refused to deliver the horses unless that amount was paid. Appellee declined to pay more

than $52 freight, and left the horses in appellant's possession, and they were afterwards sold in substantial compliance with article 330 of the Revised Civil Statutes of this State.

Appellant offered to prove by the deposition of Edward A. Moseley, a resident of Washington City, and Secretary of the Interstate Commerce Commission, that the Atchison, Topeka & Santa Fe Railway Company had filed schedules of rates, fares, and charges with the Interstate Commerce Commission under section 6 of the Act to Regulate Commerce; and that it appeared therefrom that its rate per standard carload of horses from Guthrie, Oklahoma Territory, to Purcell, Indian Territory, was $25, and that the Gulf, Colorado & Santa Fe Railway Company had filed a similar schedule, showing that its freight rate on horses per standard car from Purcell, Indian Territory, to Temple, Texas, was $50, and that these schedules were filed anterior to the shipment involved in this case.

The plaintiff's counsel objects to this testimony on the ground that the witness did not speak from his own knowledge or observation, but from the records of his office, which was a public office, and that the records of his office were the best and only evidence. The trial court sustained this objection, and this ruling is assigned as error by appellant.

Section 6 of the Act of Congress regulating interstate commerce reads in part as follows: "That every common carrier subject to the provisions of this act shall print and keep open to the public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established and which are in force at the time upon its route. The schedules printed as aforesaid by any such common carrier shall plainly state the places upon its railroad between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state, separately, the terminal charges, and any rules or regulations which in anywise change, affect, or determine any part of the aggregate of such aforesaid rates and fares and charges. Such schedules shall be plainly printed in large type, and copies for the use of the public shall be posted in two public and conspicuous places, in every depot, station, or office of such carrier, where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected. * * * And when any such common carrier shall have established and published its rates, fares, and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect, or receive from any person or persons a greater or less compensation for the transportation of passengers or property or for any services in connection therewith than is specified in such published schedule of rates, fares, and charges as may at the time be in force. Every common carrier subject to the provisions of this act shall file with the commission hereinafter provided for copies of its schedules of rates, fares, and charges which have been established and published in compliance with the requirements of this section, and shall promptly notify said commission of all changes made in the same."

Further provision is made in said section, applying to joint tariffs agreed upon between connecting carriers; but, it being shown that no joint tariffs had been agreed upon between the carriers concerned in this shipment, it is unnecessary to quote that part of the law. That above quoted, in our opinion, has application to this case.

The transportation by the Atchison, Topeka & Santa Fe Railway Company from Guthrie, Oklahoma Territory, to Purcell, Indian Territory, was interstate commerce; as also was the transportation by appellant from Purcell, Indian Territory, to Temple, Texas. Therefore, if these carriers had separately established tariff rates and published the same in the manner prescribed by the statute referred to, then a contract by either or both to carry the freight for either less or greater compensation than the established rate was unlawful and void; and it was the right and duty of such carriers to demand and collect the established rate of freight. This much is said, because it is urged in this court that the Act of Congress referred to has no application in this case, because there was no joint tariff rate agreed upon and established by the two carriers.

Concerning the particular objection offered to the testimony in the court below, it is sufficient to say that the records of the Interstate Commerce Commission could not be reached by the process of that court, and we have been cited to no statutory provision, and have found none ourselves, authorizing certified copies from such records to be used in evidence. We think the court erred in excluding the testimony under consideration.

If upon another trial the testimony does not bring the case within the operation of the Interstate Commerce Law, and the plaintiff shows that he made a contract with the initial carrier for a through rate of $52, and proves that he tendered to appellant the $52, he will be entitled to recover, because the sum tendered was $2 in excess of appellant's established rate, and conceding appellant's contention that it was not bound by the contract made with the Atchison, Topeka & Santa Fe Railway Company, the latter carrier would be bound thereby, and appellant would not be required, in a settlement with it, to pay over more than $2.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*